**TEXTILE AND APPAREL GROUP, AMERICAN IMPORTERS ASSO-CIATION, et al., Appellants,**

v.

**FEDERAL TRADE COMMISSION et al., Appellees.**

No. 22505.

United States Court of Appeals District of Columbia Circuit.

Argued Jan. 6, 1969.

Decided March 26, 1969.

Mr. Milton M. Gottesman, Washington, D. C., with whom Mr. Michael P. Daniels, Washington, D. C., was on the brief, for appellants.

Mr. Robert V. Zener, Attorney, Department of Justice, with whom Asst. Atty. Gen. Edwin L. Weisl, Jr. (at the time the brief was filed) and Messrs. David G. Bress, U. S. Atty., and Alan S. Rosenthal, Attorney, Department of Justice, were on the brief, for appellee Federal Trade Commission. Messrs. Harold D. Rhynedance, Jr., Attorney, Federal Trade Commission, and Leonard Schaitman, Attorney, Department of Justice, also entered appearances for appellee Federal Trade Commission.

Mr. Eugene Gressman, Washington, D. C., with whom Mr. Jack A. Crowder, Washington, D. C., was on the brief, for appellees National Knitted Outerware Association, National Association of Wool Manufacturers and Northern Textile Association.

Before BURGER, WRIGHT and McGOW-AN, Circuit Judges.

J. SKELLY WRIGHT, Circuit Judge:

In the Wool Act of 1939[1] Congress provided that all wool goods introduced into commerce must bear a label identifying the wool content of the material. General supervision of the Act was vested in the Federal Trade Commission. On December 22, 1967, the Commission promulgated Rule 36[2] which set out a detailed procedure whereby imported wool would be intercepted at Customs and tested by the Commission before it could be released into the country.

Appellants, an association representing a large number of wool importers and a number of other importers not in the association, initially sought to dissuade the Commission from issuing Rule 36. Failing in that endeavor, they brought this suit in the District Court here, prior to the effective date of the rule, for a declaratory judgment and an injunction, claiming that Rule 36 was not authorized by the Wool Act, and that, if it was, it violated the Administrative Procedure Act[3] and the due process clause. Associations representing domestic wool grow-

ers and manufacturers intervened in favor of Rule 36. One District Court judge granted a preliminary injunction against enforcement of the rule; later, however, another District Judge set aside the injunction and granted both the Commission's motion for summary judgment and the intervenors' motion to dismiss for lack of jurisdiction because no justiciable case or controversy presently existed. Appellants appeal from these judgments.[4]

We hold that the case is ripe for determination now, and that Rule 36 is not authorized by the Wool Act. Accordingly, the judgment of the District Court is reversed and the case is remanded to that court with orders to grant summary judgment for appellants and a permanent injunction against enforcement of Rule 36.[5]

I

The criteria for determining whether judicial review of Rule 36 is appropriate before the rule is specifically applied to any particular wool importer are set out in Abbott Laboratories v. Gardner, 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). Since an examination of that case reveals a situation generally similar to that presented by Rule 36, here, as there, judicial review at a pre-enforcement stage is appropriate.

*Abbott* involved a rule promulgated by the Commissioner of Food and Drugs. Prior to its enforcement, an association representing most drug manufacturers

---

1. Wool Products Labeling Act of 1939, 15 U.S.C. § 68 *et seq.* (1964).

2. 16 C.F.R. § 300.36 (1968). *See* Appendix for the full text of Rule 36.

3. 5 U.S.C. § 551 (Supp. III 1965–1967).

4. Appellants asked for an injunction pending appeal, but the need for such was eliminated when the Commission stated it would hold Rule 36 in abeyance pending the decision of this court.

5. In view of our disposition, we do not reach the issue whether, if the statute

authorized such a rule, the rule nonetheless violates the Constitution or the Administrative Procedure Act. Further, we do not reach the question, perhaps necessary to a determination of constitutional or APA violation, whether importers would be able to have a Rule 36 determination reviewed in either the Customs Court or the District Court. Finally, our disposition leaves open the question, as discussed in Part III, of the authority of the Bureau of Customs to promulgate and enforce a rule along the lines of Rule 36.

brought a suit for declaratory judgment and injunction, claiming that the rule was in excess of the authority given by the governing statute. The Supreme Court first looked to the statute to see if anything therein particularly *prohibited* a pre-enforcement injunction, pointing out the strong general presumption that orders of an agency adversely affecting persons are reviewable. The Court found no such prohibition in the statute.

The Court then went on to list the factors from which it concluded that the case was "ripe" for review at that time:

" * * * [T]he issue tendered is a purely legal one * * *. * * *

\* \* \* \* \* \*

" * * * The regulation challenged here, promulgated in a formal manner after announcement in the Federal Register and consideration of comments by interested parties is quite clearly definitive. There is no hint that this regulation is informal * * or tentative. It was made effective upon publication, and the Assistant General Counsel for Food and Drugs stated * * * that compliance was expected.

\* \* \* \* \* \*

" * * * [T]he impact of the regulations upon the petitioners is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage. These regulations purport to give an authoritative interpretation of a statutory provision that has a direct effect on the day-to-day business of all prescription drug companies * * *. * * * *"

387 U.S. at 149–152, 87 S.Ct. at 1515–1517. (Footnote omitted.)

Turning to Rule 36, we find that this rule will have an immediate and substantial impact on the day-to-day business of the wool importers. The rule provides that all wool imports will be temporarily detained at Customs while the Commission decides whether to issue a notice of release. The Commission has three days to make up its mind; if within the three days the Commission decides that it has reason to believe some goods may be mislabeled, it can order the goods further detained while it conducts tests. The tests may take a week or two or more. After the tests, the Commission can issue a notice of release or refuse to do so until the importer changes the label. If the importer wishes to have the goods released prior to the Commission's determination, he can do so only upon posting a bond in the amount of the goods and risking forfeiture up to the value of any goods sold if the Commission ultimately decides that the goods are mislabeled. There is no provision for a hearing at any time, before either the Commission or the Bureau of Customs, and no provision for judicial review.

The record contains uncontradicted affidavits from wool importers that delivery of style woolen goods, such as sweaters, is a highly volatile business; styles change rapidly, and demand for goods must be met immediately. The importers make out a convincing case that the potential delays of several weeks even for goods found after testing to be correctly labeled, and the unlimited delay for goods found by the Commission to be mislabeled, could wreak havoc with their delivery schedules. The result might be that large stores, wary of the possibility that the imported goods may not be delivered on time, would shift to domestic orders. Further, for any shipment of goods actually detained, the stores would very probably end up cancelling the contract (the contracts usually contain a definite delivery time), forcing the importers to dump the goods into thrift stores, at a considerable loss to the importers. In sum, a sufficient showing is made of substantial interference by Rule 36 with the normal business of the importers.

Further, as in *Abbott*, the issue tendered is a purely legal one—whether the rule is in excess of statutory or constitutional authority. And here there is a serious question whether, and to what extent, the Commission's determination under Rule 36 would ever be reviewable since the rule contains no provision for review. In any case, review at a later time would only present the same issue, with no real clarification of any relevant fact.

As in *Abbott*, the rule here was "promulgated in a formal manner"; there is "no hint that this regulation is informal * * * or tentative." Another similarity with *Abbott* is that appellants here represent virtually the entire body of persons to be affected by the rule. Since their challenge goes to the basis of the rule itself and would, if successful, require permanently enjoining the rule, it is to the advantage of both the importers and the Commission to know now whether the importers will have to live with the rule (and thus alter their contracts accordingly) or whether the Commission should cancel plans to appropriate sums and personnel to implement the rule before a large apparatus is actually set up.

Finally, here, as in *Abbott*, there is nothing in the controlling statute (the Wool Act) which indicates that such a rule cannot be reviewed until it is applied. For these reasons, then, the time is ripe for review and thus we turn to the merits.

## II

■ The central issue is whether the Wool Act of 1939 allows the Commission to promulgate Rule 36. The Act of 1939 contains a general enforcement section, Section 6,[6] which states that the Commission shall enforce the Act through the traditional enforcement methods given it in the Federal Trade Commission Act.[7] Such enforcement is through the familiar cease and desist process: when wool goods are sold in commerce, the Commission can check to see if any are mislabeled; if it believes some are, it issues a notice to the manufacturer, holds a hearing, and then reaches a decision. Only after this hearing can a cease and desist order be issued, limited to goods still held out for sale in commerce. The Wool Act also contains a provision allowing the Commission to obtain a preliminary injunction when it feels the Act is about to be violated.[8]

Rule 36 provides for an entirely different enforcement process, one alien to the normal Commission cease and desist practice. The goods are held at Customs while the Commission, *ex parte*, decides whether to conduct tests. If tests are conducted, the Commission is the sole judge as to the results. The importer is given no hearing at any stage. In essence, this Rule 36 procedure resembles an *ex parte* licensing scheme. Nowhere does the Act explicitly authorize such a procedure. In view of this significant departure from ordinary agency practice, we look for some fairly strong indication, backed by sound policy, that Congress meant for the Commission to act in this way.

At the time it promulgated the rule, the Commission relied on a general provision in the Act allowing it to make rules "necessary and proper for administration and enforcement" of the Act.[9] It justified the rule by pointing out that it has the power to order domestic manufacturers to keep records on wool as it is made into goods; thus the Commission can check at an early stage to detect possible violations. For foreign goods, however, the Commission has no such power outside this country. Thus it must wait

---

6. 15 U.S.C. § 68d.

7. 15 U.S.C. § 41 *et seq.* (1964).

8. Section 7, 15 U.S.C. § 68e.

9. 15 U.S.C. § 68d.

until the finished goods arrive here. To correct this imbalance it issued Rule 36.

In the absence of any supportive legislative history, we doubt that the Act's silence on the subject provides a valid authorization for Rule 36. The general "necessary and proper" clause is hardly a strong reed on which to rest this novel enforcement practice. While the Commission's concern about the imbalance favoring the foreign manufacturer of wool products is understandable, Rule 36 swings the balance sharply the other way. Pending Commission approval imported wool is sequestered, or subjected to stiff bond forfeiture possibilities, while domestic manufacturers are free to put mislabeled goods on the market. If a cease and desist order is eventually issued, only that domestic wool not yet sold can be seized. Further, the domestic manufacturer has full notice and hearing rights not accorded to importers.

Consulting the legislative history, it seems fairly evident that Congress did *not* intend to give the Commission the power to control wool imports in this manner. In 1938 a bill similar to the one enacted a year later (the Wool Act of 1939) was passed by the Senate. The bill did not get to the House floor. That bill, S. 3502, contained a section on importers which was substantially similar to Rule 36.[10] In 1939 the Senate sponsors of S. 3502 reintroduced their bill, with some changes. One of the changes was the elimination of this section, and the substitution of what became the present importer section—the requirement only that importers furnish documents specifying labeling.[11]

The 1939 debates and reports were mainly concerned with the broad policy conflicts in enacting wool labeling requirements[12]; the importer provision received scant attention. What little comment there was, however, shows that the Commission was denied the power given it in the 1938 bill—the power to detain wool at Customs for inspection and testing. Senator Schwartz, the floor manager of the bill, made a brief statement at the hearings on the new bill explaining why the importer section had been changed:

"New provision is substituted with respect to imports. It avoids unjust burden that might be imposed on importer under S. 3502, and it follows principle and utilizes forms and procedure provided for in Tariff Act of 1930."[13]

Later, in the Senate debates, Senator Schwartz explained that the bill did provide for some check on importers, but that that check was to be placed in the hands of the Bureau of Customs in the Department of the Treasury:

" * * * The bill provides that articles imported from abroad, when they come in, must be labeled according to the provisions of this bill; and that information must appear upon the manifests which are required under other

---

10. The section would have allowed the Commission to detain goods at Customs while testing to see if any were mislabeled. The Commission was to make the initial decision. However, the wool importer was given the right to a hearing, but one at which the burden of proof was on him to show that the Act was not being violated. *See* S.Rep.No. 1685, 75th Cong., 3d Sess. (1938).

11. This section (§ 8, 15 U.S.C. § 68f) is the only section in the Act relating spe-

cifically to importers. It requires them to furnish documents stating the wool content of the imported goods; it also provides that any importer found to have made false documents can be barred from any subsequent importing or can have any subsequent importing conditioned on furnishing a bond.

12. *See* HEARINGS BEFORE SUBCOMMITTEE OF SENATE COMMITTEE ON INTERSTATE COMMERCE ON S. 162, 76th Cong., 1st Sess. (1939).

13. HEARINGS, *supra* Note 12, at p. 7.

sections of the general law, the tariff laws. *Under the bill those provisions will be enforced by the Treasury Department, and not by the Federal Trade Commission,* until after the products get into this country.

\* \* \* \* \* \*

" \* \* \* Under the provisions of the bill, there will have to be a labeling to show the contents of the goods, and the importer will have to stand behind the goods, and the investigations and administration of the law will be carried on by the Secretary of the Treasury and the customs officers. \* \* \* " [14]

(Emphasis added.)

The Senator produced a letter from the Secretary of the Treasury stating that the customs division would have to employ a certain number of extra persons to supervise this provision.[15] And consistent with the understanding that the Treasury Department, not the Commission, was to administer this section of the law, shortly after the Act passed the Secretary issued a rule, still in effect today, in which he provided that Customs officials could hold up wool imports while examining them for compliance with the Act:

"Packages of fiber products subject to the provisions of this section which are not designated for examination may be released pending examination of the designated packages, but only if there shall have been filed in connection with the entry the usual customs single entry or term bond \* \* \*." [16]

Thus whatever authority the Wool Act may have given the Bureau of Customs to issue a rule such as Rule 36, it seems clear that the statute did not authorize the Commission to promulgate a rule so foreign to its usual enforcement powers.

### III

On appeal, for the first time, the Commission seeks to justify Rule 36 on a new ground. The Tariff Act of 1930 [17] contains a section [18] which allows Customs to detain goods at the port of entry while Customs determines whether the goods comply with laws relating to them. The section applies to goods required by some law to be inspected, examined or appraised. The Commission now argues that Rule 36 can be justified on the authority of the Tariff Act; the reasoning goes that in both the Tariff Act and the Wool Act (citing the remarks of Senator Schwartz quoted in Part II, *supra*) the Bureau of Customs has authority to detain wool goods and test them to see if they are properly labeled. Rule 36, the argument continues, is merely in aid of this power; the Commission has simply "injected" itself into this standard Customs procedure.

■ For a number of reasons we decline to follow the Government down this road. First, the Commission in promulgating Rule 36 never stated that it was relying on this authority. Thus the parties never had a chance to make a record outlining the procedure used by Customs in normal cases, and never had a chance to develop an argument on the authority of Customs under the Wool Act.

Second, it is apparent that the Commission is not merely inserting itself into Customs procedure. Rule 36 is a Commission product from start to finish. It was promulgated by the Commission, to be supervised by the Commission, and all important determinations are to be made by the Commission. In this connection the Commission's argument runs afoul of the general principle that authority committed to one agency should not be exercised by another.[19] The reason for this is that Congress delegates to one agency

---

14. 84 Cong.Rec. (Part 9) 9554 (1939).

15. *Id.* at p. 9496.

16. 19 C.F.R. § 11.12b(c) (1968).

17. 19 U.S.C. §§ 1202–1654 (1964).

18. Section 499 of the Act, 19 U.S.C. § 1499.

19. *Cf.* § 9 of the Administrative Procedure Act, 5 U.S.C. § 558(a).

certain authority, perhaps because it feels that agency is the most capable of exercising it. Thus Congress may well have felt that the Commission should restrict its enforcement powers to the type with which it was generally familiar—cease and desist procedures—and that Customs was better equipped to handle detention of goods at a port. Further, the political realities are often such that Congress has chosen a particular agency with a particular orientation toward a problem; the proper place for interested parties to get a different agency (with perhaps a more favorable orientation) to handle the job is back in Congress.

Third, we are totally uninformed concerning the views of Customs in this matter. Customs has not been a party to this litigation, just as it was not a party to the promulgation of Rule 36. We did note in Part II that Customs has a long-standing rule, promulgated pursuant to the Wool Act of 1939, generally similar to Rule 36. But the extent to which the Customs regulation has been enforced, and the need of Customs for help from the Commission, have not been shown.

Finally, we think that the authority for Customs to promulgate a rule such as Rule 36 is by no means free from doubt. Although the remarks of Senator Schwartz certainly indicate that Customs was intended to have some role in supervising wool imports, it is not at all clear that Customs was meant to enforce a rule as rigorous, and as *ex parte*, as Rule 36. We note that in some other acts Congress has provided explicitly for detention and testing of goods at the port of entry.[20] The Wool Act contains no such explicit authorization. And in those acts explicitly authorizing detention Congress has provided the importers with notice and a right to be heard before the agency detaining the goods.

Thus we think the Commission's post-promulgation rationalization is not sufficient to justify Rule 36. We leave open the question to what extent, with what

cooperation from the Commission, and with what procedural safeguards the Bureau of Customs could legally promulgate a rule such as Rule 36.

Reversed and remanded.

## APPENDIX

Rules and Regulations under the Wool Products Labeling Act of 1939

§ 300.36.  **Imported Wool Products.**

(a) *Filing of notice of entry.* Any person who imports wool products into the United States that are subject to a requirement for formal entry through Customs shall file with the Bureau of Customs, at the time of entry for consumption or at the time of entry or withdrawal for consumption from warehouse, a form (Form 36A) in quadruplicate, in the manner prescribed by the Federal Trade Commission showing (1) the proposed type of entry of the shipment (consumption, warehouse, etc.), (2) the port of entry of the shipment, (3) the country of origin of the shipment, (4) a complete description of the products contained in the shipment and the cost thereof per unit in American dollars, (5) the information contained in the required fiber content labels affixed to wool products contained in the shipment, (6) the names and addresses of (i) the exporter, (ii) the manufacturer, (iii) the importer of record, and (iv) the actual importer of the wool products, and (7) the signature of the person filing such form. The original and two copies of Form 36A will be forwarded by the Bureau of Customs to the Bureau of Textiles and Furs, Federal Trade Commission, Washington, D. C. 20580, one copy being retained by the Bureau of Customs.

(b) *Temporary retention in customs.* Wool products subject to this section will be temporarily retained in Customs custody and not released to the importer until the Commission has issued a notice of release: *Provided, however,* That such wool products may be released from Customs custody prior to receipt of the re-

---

20. Hazardous Substances Act, 15 U.S.C. § 1273 (1964); Food and Drug Act, 21 U.S.C. § 381 (1964).

quired notice of release upon the giving of a bond, such as an immediate delivery and consumption entry bond, in a form acceptable to the Commissioner of Customs conditioned upon the redelivery to Customs custody of the goods or any part thereof, upon demand by an officer of the Bureau of Customs based upon the determination of the Commissioner not to issue a notice of release.

(c) *Notice of release.* The Commission will issue a notice of release in one of the following ways: (1) A preentry notice of release may be obtained in appropriate cases where the requirements of paragraph (d) are met by the importer. (2) At ports of entry where a Commission inspector is on duty, he will, upon examination of the Form 36A, either issue a notice of release or inform the importer that certification or testing as provided in paragraph (e) of this section is required. Failure to make such determination within 3 working days after Form 36A is filed at such a port of entry shall be equivalent to the issuance of a notice of release. (3) At ports of entry where no Commission inspector is on duty, a determination whether to issue a notice of release or to require certification or testing will be made within 3 working days after the Commission receives the Form 36A. Failure of the Commission to make any determination within this period shall be equivalent to issuance of a notice of release. (4) If certification or testing is required, a notice of release will be issued by the Commission when and if the requirements of paragraph (e) of this section are satisfied.

(d) *Preentry notice of release.* The Commission will, at the request of an importer and upon a proper showing, issue a notice of release prior to entry into the United States of any shipment of wool products. Requests for preentry release shall be accompanied by such information or data, including manufacturers' records, laboratory analyses, foreign government certifications, and certifications of government designated trade associations or other bodies, as will show no reason to believe that they may be misbranded. The Commission will also consider as relevant a statement that such products are of the same type, category, and fiber content and from the same manufacturer as products that were previously released by the Commission if such statement is accompanied by a copy of the original notice of release. Requests for preentry notice of release shall be filed as early as possible, but in no case less than 7 working days prior to the entry of any shipment. Prior to entry, the Commission will either (1) issue a notice of release, (2) inform the importer that it will require certification and testing of such shipment, or (3) inform the importer that the information submitted is insufficient to support a determination.

(e) *Certification or testing.* (1) Where the Commission has reason to believe that any wool products subject to this section may be misbranded, it may determine not to issue a notice of release but to require that such wool products be held for certification or testing. In such a case, at the option of the Commission, the Commission may (i) accept a certification as to the fiber content of such products based on a test method and sampling procedure approved by the Commission and submitted by a laboratory included in the Commission's list of approved testing laboratories, or (ii) require that it be furnished with samples of the wool products extracted by a person designated by the Commission, which the Commission will test or have tested at the expense of the importer. Upon acceptance of a proper certification or test results showing the products to be correctly labeled, the Commission will immediately issue a notice of release.

(2) If the certification or test results show the goods to be misbranded, the Commission will not issue a notice of release until after the goods have been correctly relabeled. If the certification or test results demonstrate that there are

such wide variations in the fiber content of individual wool products as to preclude a determination of fiber content on the basis of random sampling, the Commission will not issue a notice of release until after it has determined, upon consultation with the importer, the manner in which such goods should be relabeled, and such goods have been relabeled in conformity with that determination. Relabeling will be done at the expense of the importer, and the Commission will issue a notice of release immediately upon the receipt of satisfactory evidence from the importer showing that the goods have been correctly relabeled.

(f) *Forfeiture of bond.* Upon determination by the Commission that a notice of release will not be issued and where such wool products have been released to an importer under a bond described in paragraph (b) of this section, demand for their redelivery will be made. The failure of the importer to redeliver wool products to Customs custody, after demand therefor, shall subject such importer to payment of liquidated damages as provided for in the bond referred to in paragraph (b) of this section.

(g) *Examination and testing after release.* Any notice given by the Commission as to the manner of labeling imported wool products or any notice of release of wool products given under this section shall be without prejudice to the right of the Commission to subsequently examine and test additional wool products contained in any shipment of imported wool products which has been subject to the procedure provided by this section or to make inspections or investigations relative to such products. The Commission will not proceed against any party for misbranding of wool products which have been subject to the testing procedures provided by this section without notice to such party and affording such party an opportunity to take such effective action as the Commission may deem appropriate to cause any misbranded products to be properly labeled: *Provided, however,* That such party must be able to establish that the wool products have

been subject to the testing procedures provided by this section.

[32 F.R. 20853, Dec. 28, 1967, effective Feb. 12, 1968]