**NATIONAL PETROLEUM REFINERS ASSOCIATION et al., Plaintiffs,**

v.

**FEDERAL TRADE COMMISSION et al., Defendants.**

Civ. A. No. 1180–71.

United States District Court, District of Columbia.

April 4, 1972.

**1344**

William Simon, J. Wallace Adair, Robert W. Steele, Roger C. Simmons, of Howrey, Simon, Baker & Murchison, Washington, D. C., for plaintiffs.

L. Patrick Gray, III, Asst. Atty. Gen., Harold H. Titus, Jr., U. S. Atty., Harland F. Lathers, and Stuart E. Schiffer, Attys., Dept. of Justice, Ronald M. Dietrich, Gen. Counsel, Harold D. Rhynedance, Jr., Asst. Gen. Counsel, Alvin L. Perman, James P. Timony, Nicholas S. Reynolds, Attys., F. T. C., Washington, D. C., for the Federal Trade Comm. and others.

## OPINION

AUBREY E. ROBINSON, Jr., District Judge.

This suit questions the authority of the Federal Trade Commission (FTC) to promulgate Trade Regulation Rules pursuant to 15 U.S.C. § 41 *et seq.* (1971). It is a case of "first impression," no other courts having directly considered the issue.[1]

The FTC announced, on July 30, 1969, that it intended to issue a Trade Regulation Rule declaring that failure to post octane numbers on gasoline pumps at service stations would be an "unfair method of competition" and a "deceptive practice," constituting a violation of Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45 (1971) (hereinafter FTCA).[2] On December 30, 1970, the Commission issued such a Rule;[3] extended the effective date of the Rule on April 13, 1971 for the purpose of considering a revision thereof; withdrew the effective date[4] and proposed an alternative Rule on August 19, 1971;[5] and on December 9, 1971 issued a revised Rule in this respect that was to be ef-

---

[1.] In two cases, courts have refused to enjoin the Commission from holding hearings looking toward the promulgation of Trade Regulation Rules holding that the proper procedure was to attack the rule after it issued. Bristol-Myers Co. v. Federal Trade Commission, 1968 CCH Trade Cas. ¶ 72,496, pp. 85,677–78 (D.D.C. 1968), rev'd in part and aff'd in part, 138

U.S.App.D.C. 22, 424 F.2d 935 (1970); Lever Brothers v. Federal Trade Commission, 325 F.Supp. 371 (D.Me.1971).

[2.] 34 F.R. 12449 (1969).

[3.] 36 F.R. 354 (1971).

[4.] 36 F.R. 7309 (1971).

[5.] 36 F.R. 16120 (1971).

fective March 15, 1972 [6] but for a stay entered by this Court.

This Rule, in simple fashion, makes the failure to post octane numbers an "unfair method of competition" and an unfair or "deceptive act" or practice without the necessity of further proof. Plaintiffs here contend that the Commission lacks statutory authority to promulgate this Rule.

The Court need not consider the several other contentions raised by the Plaintiffs, for the answer reached here pretermits all other issues. For the reasons set forth below, that to this Court are persuasive, it is held that the FTC lacks the requisite statutory authority to issue Trade Regulation Rules.

Initially, one considers that the FTC is materially distinct from other administrative bodies. The FTC was created with the express purpose that it be a purely investigative body. This factor distinguishes the FTC from other agencies that are regulatory in nature. Recognizing that the FTC might serve a more vital function, Congress appended to FTC's investigatory powers, quasi-judicial authority to file complaints, hold hearings, afford due process and determine, based upon a finding of fact, whether violations of the FTCA had or were occurring. The determination having been made that a violation existed, the FTC was granted cease and desist power to correct and prevent its continuance. Judicial review of cease and desist orders was specifically provided for to the Courts of Appeals. These quasi-judicial powers are laid out separately in Section 5 of the FTCA.[7] The investigative powers of the FTC are expressed in Section 6 of the FTCA.[8]

There is only one reference in the FTCA that speaks to the issuance of rules and regulations. The FTC relies heavily upon its substance and it states:

The commission shall also have power —

. . . . . .

(g) From time to time to classify corporations and to make *rules and regulations* for the purpose of carrying out the provisions of sections 41–46 and 47–58 of this title. (emphasis added)[9] This clause is located in Section 6 of the FTCA where the investigative powers are conferred.

While the authority at issue may at first impression be thought to fall within this section, to issue rules and regulations concerning deceptive or unfair trade practices or competition, both the context of Section 6(g) and the legislative history accompanying it demonstrate that this particular authority was not, nor has it been, granted.

The history of this section is clear. Section 6(g) of this Act was intended only as an authorization for internal rules of organization, practice, and procedure. The section was to insure that the FTC had the power to require reports from all corporations.[10] Section 6(g) of the FTCA originated in Section 7 of the House Bill of 1914 that conferred only investigative powers on the Commission.[11] This House Bill did not contain provisions analogous to Section 5 of the Statute, as enacted, that conferred adjudicative authority upon the FTC. This is because the House Bill considered the FTC as an investigative body. Thus, the rulemaking grant in Section 6(g) could only have been intended as an adjunct to the Commission's investigative powers. Supportive of this analysis is the fact that the Senate version of this FTCA made no provision whatever for the promulgation of rules

6.  36 F.R. 23871 (1971).

7.  15 U.S.C. § 45 (1971).

8.  15 U.S.C. § 46 (1971).

9.  15 U.S.C. § 46(g) 1971).

10.  Federal Trade Commission Bill, Comparative Print, S.Doc. No. 573, 63d Cong.,

2d Sess., p. 14, 15 (1914) ; H.R.Rep. No. 533, 63d Cong., 2d Sess., p. 3 (1914) : 51 Cong.Rec. 8845, 9047, 9048 (1914).

11.  H.R. 15613, 63d Cong., 2d Sess., Sec. 8 (1914).

and regulations in any context. Therefore, the only provisions concerning rules and regulations that were considered by the Conference Committee and the Congress stem from the House Bill. The existence of Section 6(g) in this statute could only pertain to housekeeping or procedural matters, as under the House Bill, the Commission had no authority to prescribe unfair, deceptive, or anti-competitive business practices.[12] The House Bill conferred only investigative powers.

Notably, when the Senate Bill's provision enabling the Commission to institute adjudicative proceedings to prevent unfair methods of competition was added, there was no indication that Section 6(g) rulemaking authority was intended to extend to this new area affixed by the Senate Bill in such a way as to circumvent the extensive due process procedures expressly provided for in Section 5 of the FTCA. Despite several amendments to the Act, no indication of such an intent has since been expressed.

Significantly, Congress refused to amend its proposals on two separate occasions that would have granted the Commission the very rulemaking power it now seeks to exercise.[13] In addition to the provisions of Section 6(g), the Amendment offered by Congressman Lafferty urged that the Commission be given the power to "make, alter, or repeal regulations further defining more particularly unfair trade practices or unfair or oppressive competition." [14] Thus, when Sections 6(g) and 5 were first proposed, Congress felt that an explicit grant of legislative authority was necessary, other than 6(g), to grant substantive rulemaking powers to the FTC. This Congress consistently refused to permit.[15]

---

12. Having admitted that both the drafters in the House and the Senate had no intention of granting the Commission any rulemaking power, the Commission took the position that rulemaking authority was somehow mysteriously incorporated into the Conference Committee Report that was ultimately passed. Reasoning from this unsupported position, the Commission claimed that the House and Senate debates prior to the Conference Report were of no relevance to whether Congress intended to grant substantive rulemaking powers to the Commission.

In making this argument, the Commission ignores the fact that the legislative authority of a Conference Committee is limited to resolving differences between the two Houses. Such a Conference Committee cannot authorize new legislation that has not been submitted by one of the two Houses. See Jefferson's Manual, Section 546, which has governed House procedures since 1837. In short, the Conference Committee could not have given the FTC a power that was not included in the bill as it passed one of the Houses. House Rule XXVII (3) (1971); Rules and Manual of the United States Senate, Section 343 (1965). See also comments of Judge Covington, a member of the Conference Committee, 51 Cong.Rec. 14932 (Sept. 14, 1914); and the remarks of Congressman Sherley, 51 Cong.Rec. 14938 (Sept. 10, 1914).

13. 51 Cong.Rec. 9047, 9049–50, 9056–57 (1914).

14. H.R.Rep. 533, 63d Cong., 2d Sess., Part 3, p. 21 (1914).

15. The amendment proposed by Congressman Lafferty that would have given the Commission the power to make, alter, or repeal regulations further defining more particularly unfair trade practices or unfair or oppressive competition also included the text of Section 6(g) within it. Thus, even in Congressman Lafferty's own view, Section 6(g) did not in and of itself confer the legislative rulemaking powers that the Commission now asserts it confers upon it. See also 51 Cong.Rec. 14,932 (1914) where Judge Covington, a member of the Conference Committee, who was called the "author of the bill," specifically stated in this regard: "The Federal Trade Commission will have no power to prescribe the methods of competition to be used in the future. In issuing its orders it will not be exercising power of a judicial nature . . . ."; and 51 Cong.Rec. 14,928 (1914) where Congressman Sherley expressed the thought: "In other words, (the Trade Commission) exercises in no sense a legislative function such as is exercised by the Interstate Commerce Commission." Moreover, the evidence is overwhelming that Congress intended the Commission to act only upon Orders issued in specific proceedings after a complaint, hearings, and basis in fact established. 51 Cong.Rec. 14,928 (1914).

Section 6(g) has remained unchanged since 1914, and it is still located in Section 6 of the Act among the Commission's other investigative powers.[16] If Congress at any time had intended to confer upon the Commission the authority to prescribe substantive law in such a manner as to vitiate the substantial procedural safeguards specified in the Act itself, there certainly would be some reference to this extraordinary grant of power in the Act or the legislative history. The fact that there is none lends credence to the conclusion that the Commission has no substantive, legislative rulemaking authority under the FTCA.

It is important, also, to consider the fact that the FTC, for approximately 50 years from the passage of the FTCA, never asserted the authority it claims to have always possessed. This indicia points to the fact that the FTC knew it was not originally granted this rulemaking authority.

Another critical analytical factor is that where Congress intended to grant substantive rulemaking authority to the FTC, it has done so clearly and unequivocally.[17] In each of those instances Congress felt the need to specifically authorize the Commission to issue substantive rules.[18] These examples of specific authorization would be "a meaningless and superfluous legislative gesture" if the Commission had had the authority it now claims was given it in 1914.[19] The fact that Congress particularized the grant of substantive rulemaking power in these narrowly circumscribed statutes and yet did not do so with respect to the Federal Trade Commission Act, that deals, not with consumer labeling, but with "competition" generally in all its many aspects, makes clear that Congress did not intend the Commission to have such powers under the latter statute.

This conclusion is further substantiated by the history of the Flammable Fabrics Act. Unlike the Wool, the Fur, and the Textile Fiber Acts, the general rulemaking power granted the Commission in the Flammable Fabrics Act did not specify the subjects upon which rules could be issued, nor did it contain an express provision that a violation of rules promulgated would constitute a violation of the FTCA.[20] It provided only that the Commission could make, "such rules and regulations as may be necessary and proper for purposes of administration and enforcement of (the Act),"[21] *i. e.,* in language similar to that of Section 6(g) of the FTCA. In 1967, however, Congress amended the Flammable Fabrics Act[22] to specifically provide that the Commission could issue rules requiring the "maintenance of records relating to fabrics, related materi-

---

16. 1951 Annual Report of the Federal Trade Commission, pp. 16–18 that states "the broad scope of the Commission's authority to investigate is indicated" by the powers conferred on the Commission in Section 6 of the Federal Trade Commission Act, specifically including the rulemaking power of Section 6(g). Other annual reports also refer to the Commission's rulemaking power in an investigative context. *See, e. g.,* 1954, p. 12; 1955, p. 9; 1956, p. 9; and 1957, p. 8; all Annual Reports of the Federal Trade Commission.

17. Wool Products Labeling Act, 15 U.S.C. §§ 68–68j (1971); Textile Fiber Products Identification Act, 15 U.S.C. §§ 70–70k (1971); Fur Products Labeling Act, 15 U.S.C. §§ 69–69j (1971); Flammable Fabrics Act, 15 U.S.C. §§ 1191–

1200 (1971); and the Fair Packaging and Labeling Act, 15 U.S.C. §§ 1451–61 (1971).

18. This is consistent with the Congressional belief in 1914 that a separate provision from Section 6(g) was necessary to grant the FTC substantive rulemaking authority.

19. R. Burris and H. Teter, Antitrust: Rulemaking v. Adjudication in the FTC, 54 Georgetown L.J. 1106, 1125 (1965).

20. *Compare* 15 U.S.C. § 1192 (1964) *with* 15 U.S.C. § 68a, 15 U.S.C. § 69a(a), (b), (c), and 15 U.S.C. § 70a(a), (b), (c) (1964).

21. 15 U.S.C. § 1194(c) (1971).

22. Id. at 5.

als, and products" and the following language was added by Congress to that provision:

> The violation of such rules and regulations shall be unlawful and shall be an unfair method of competition and an unfair and deceptive act or practice, in commerce, under the Federal Trade Commission Act.

The purpose of that amendment, according to the Report of the House Committee on Interstate and Foreign Commerce, was to "make the Flammable Fabrics Act more flexible by permitting flammability standards and other regulations to be issued under rulemaking procedures rather than having them fixed by law as is now the case."[23] The report explained further that, under the amended Flammable Fabrics Act, the Commission was authorized "to establish regulations for recordkeeping" and that "(v)iolations of any such regulation would be an unfair trade practice under the Federal Trade Commission Act."[24]

The original language of the Flammable Fabrics Act was *in pari materia* to Section 6(g) of the FTCA.[25] Nevertheless, Congress felt the need to amend the statutes to give the Commission the power to include "provisions for maintenance of records relating to fabrics, related materials, and products," and the further need to amend the statutes to provide that violations of such rules would constitute a violation of Section 5.[26] Logic compels a similar need to spell out substantive rulemaking authority in the case of Section 6(g) before such authority can be said to exist. Congress has not done so.[27] The Commission's claim of unlimited rulemaking power under the FTCA is, therefore, not only unsupported by anything in that Act itself, or its legislative history, but is also inconsistent with the history of other statutes entrusted to the Commission's administration by Congress.

■ The Federal Trade Commission further argues that the words "rules and regulations" in Section 6(g) are to be defined as they are in the Administrative Procedure Act (APA): "The whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy . . . ."[28] The Federal Trade Commission Act was passed in 1914. The APA was passed in 1946. It is inconceivable to this Court that those words, when written and considered by Congress in 1914, can have the same exact meaning as those words carry today via the 1946 APA. There exists no cross reference or other legal relationship between these words in their respective statutes. The APA gave a specialized construction to these words. Congress recognized this special meaning by amending the National Labor Relations Act, also passed before the APA, to read, "to make . . . in the manner prescribed by the Administrative Procedure Act, such rules and regulations as may be necessary to carry out the provisions of this subchapter."[29] Congress, however, did not make a similar amendment to the Federal Trade Commission Act. The inference, therefore, is that Congress did not expect the FTC to engage in substantive rulemaking in the manner prescribed by the APA. The rulemaking power in Section 6(g) of the FTCA remains unchanged by Congress to date, and conveys only the authority to make such rules and

---

23. H.R.Rep. No. 972, 90th Cong., 1st Sess., p. 1 (1967) U.S.Code Cong. & Admin. News, p. 2136.

24. *Id.* at 5.

25. 67 Stat. 112 (1953).

26. 81 Stat. 570 (1967).

27. *See* Textile and Apparel Group, American Importers Ass'n v. Federal Trade Commission, 133 U.S.App.D.C. 353, 410 F.2d 1052, cert. denied, National Knitted Outwear Ass'n v. Textile and Apparel Group, Am. Importers Ass'n, 396 U.S. 910, 90 S.Ct. 223, 24 L.Ed.2d 185 (1969) ; Federal Trade Commission v. B. F. Goodrich Co., 100 U.S.App.D.C. 58, 242 F.2d 31 (1957) which indicates that broad power to promulgate trade regulation rules does not exist beyond the narrower grants of rulemaking authority given by the Congress.

28. 5 U.S.C. § 551(4) (1971).

29. 29 U.S.C. § 156 (1971).

regulations in connection with its housekeeping chore and investigative responsibilities.

■ The Commission further contends that Section 5(a)(6) of the Act, that authorizes it to "prevent" unfair methods of competition, constitutes implied rulemaking power. In making this argument, the Commission ignores Section 5(b), the very next paragraph of the statute that requires the Commission to conduct adjudicative proceedings. General rules of statutory construction and the scheme of the FTCA itself demonstrate that the mandate of Section 5(a)(6) is to be carried out by means of adjudicative process specified in Section 5(b).[30] Moreover, the Supreme Court has expressly stated that the FTCA must "be read as an integrated whole." [31] Thus, the FTC's claim is patently untenable. If the legislative history of the Act will not permit the issuance of Trade Regulation Rules under the only section explicitly granting the Commission rulemaking authority, such sweeping authority cannot be based upon an implied grant of power in some other section of the Act or in the Act as a whole. In the face of an overwhelmingly contrary legislative history, there must be some basis for granting an agency unprecedented and farreaching rulemaking power other than the claim of the agency itself that such power is necessary or desirable for its more efficient operation. The only support, however, for the Commission's novel theory of statutory construction is its own words. While the courts may have sustained imprecise grants of rulemaking power in some instances, they have never done so in the face of an overwhelmingly contrary legislative history, such as that of the Federal Trade Commission Act.[32]

The record amply reflects that the Commission itself has repeatedly ad-

---

30. Section 5 remained a single unitary provision without separate, designated subsections throughout the House and Senate consideration of the measure. Today's lettering of Section 5 paragraphs resulted from the 1952 McGuire Act, a development 38 years after the original passage of the statute and completely unrelated to the question here under consideration.

31. United States v. Morton Salt Co., 338 U.S. 632, 650, 70 S.Ct. 357, 368, 94 L.Ed. 401 (1950).

32. This factor readily distinguishes cases such as National Broadcasting Co. v. United States, 319 U.S. 190, 63 S.Ct. 997, 87 L.Ed. 1344 (1943) where neither the statutory scheme nor the legislative history of that Act clearly negated an implied grant of legislative power to the Federal Communications Commission and that statute was intended to authorize an agency to broadly regulate a specific, narrow segment of industry; United States v. Oregon, 366 U.S. 643, 648, 81 S.Ct. 1278, 6 L.Ed.2d 575 (1961); United States v. Public Utilities Comm. of Calif., 345 U.S. 295, 73 S.Ct. 706, 97 L.Ed. 1020 (1953); Schwegman Bros. v. Calvert Distillers Corp., 341 U.S. 384, 71 S.Ct. 745, 95 L.Ed. 2d 1035 (1951); Pacific Coast European Conf. v. Federal Maritime Comm., 126 U.S.App.D.C. 230, 376 F.2d 785 (1967). See also Weston, Deceptive Advertising and the Federal Trade Commission: Decline of Caveat Emptor, 24 Fed.Bar.J. 548, 570-71 (1964) where it is stated:

To support its theory (of implied power), the FTC cites Supreme Court decisions involving the S.E.C. under the Public Utility Holding Co. Act, and the F.C. C. and the F.P.C. as authority for the proposition that an administrative agency has the choice to use either adjudication or rulemaking procedure to make 'substantive' rules. These cases, however, involve agencies with not only express power to issue 'legislative' rules but also with far more pervasive regulatory jurisdiction over the specialized industries involved. It may be that some agencies vested with both adjudicatory and legislative rulemaking powers have a choice of which procedure to use. But it is not at all clear that an adjudicatory agency specifically denied 'legislative' rulemaking power can use legislative type hearings to make 'substantive' rules other than merely 'interpretative' rules that are open to full-scale judicial review.

Testimony by former Federal Trade Commission Chairman Paul Rand Dixon before a Senate Subcommittee, Hearings before the Subcommittee on Administrative Practice and Procedure of the Senate Committee on the Judiciary, 88th Cong., 1st Sess. 169-70 (Oct. 31, 1963).

mitted that it has no power to promulgate substantive rules of law [33] and Congress has implicitly rejected the efficacy of Commission Trade Regulation Rules by legislatively superseding them.[34] Moreover, the Supreme Court has impliedly rejected the Commission's claim of rulemaking power, as have many of the legal commentators.[35]

The Court has considered fully all the other arguments put forth by the FTC in this suit. The sum total of their argument is a "bootstrap" operation, designed to conclude that the FTC possesses powers that it clearly does not have. The famous stricture of Mr. Justice Brandeis applies here:

What the Government asks is not a construction of the statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope. To supply omissions transcends the judicial function.[36]

It is therefore the conclusion of this Court, that for the above stated reasons, the statute (FTCA) does not confer upon the Federal Trade Commission the authority to promulgate Trade Regulation Rules that have the effect of substantive law.

Plaintiffs' motion for Summary Judgment is hereby granted.

Defendants' motion for Summary Judgment is hereby denied.

33. Hearings before the Subcommittee on Administrative Practice and Procedure of the Senate Committee on the Judiciary, 88th Cong., 1st Sess. 169–70 (Oct. 31, 1963); Hearings before the Subcommittee on Antitrust and Monopoly of the Senate Committee on the Judiciary, 88th Cong., 1st Sess. 281 (March 20, 1963); Hearings before the Senate Committee on Commerce, 91st Cong., 1st and 2d Sess., p. 9 (Dec. 17, 1969); Hearings before the House Subcommittee on Commerce and Finance of the Interstate and Foreign Commerce Committee, 91st Cong., 2d Sess., p. 54, 76–77 (Feb. 4, 1970). *See also* Title II of S. 986, 92d Cong., 2d Sess. § 206 (1972), currently pending in Congress, where Section 206 of that Bill would amend Section 6(g) of the FTCA to authorize the Commission to define with specificity through legislative rules those acts or practices which are unfair or deceptive to consumers and in violation of Section 5(a) (1) of the FTCA. It is noteworthy, here, that almost sixty years after the passage of the original Act that the Commission claims implicitly granted it authority to promulgate rules to regulate all otherwise non-regulated industries, the Senate found the grant of such authority so far reaching and so inherently capable of abuse that it retained a sixty day veto over any use of that power in their proposed Bill. It is further significant that Congress has still not passed this legislation giving the Commission rulemaking authority. *See,* Cong.Rec., Nov. 8, 1971, Daily Ed., p. S 17828, and statements of Senator Hruska *Id.,* at p. 17857; Senator Cotton, *Id.* at S 17873; and Senator Cooper, *Id.* at S 17884.

34. The Trade Regulation Rule relating to unsolicited mailing of credit cards (16 C.F.C. 415) was superseded by express provisions in the Truth-In-Lending Act (15 U.S.C. §§ 1642–44, et seq. (1971); the Rule relating to the prevention of unfair or deceptive advertising in labeling of cigarettes (29 F.R. 12626, 15570) was preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331 et seq. (1971); and the proposed Rule relating to shipment of unordered merchandise (16 C.F.R. 427) was superseded by express provisions of the Postal Reorganization Act, 39 U.S.C. § 3009 (1971).

35. Federal Trade Commission v. Colgate Palmolive Co., 380 U.S. 374, 385, 85 S.Ct. 1035, 13 L.Ed.2d 904 (1965); Addison v. Holly Hill Fruit Products, Inc., 322 U.S. 607, 617–618, 64 S.Ct. 1215, 88 L.Ed. 1488 (1944); Schechter Poultry Corp. v. United States, 295 U.S. 495, 532–533, 55 S.Ct. 837, 79 L.Ed. 1570 (1935); Federal Trade Commission v. Raladam Co., 283 U.S. 643, 648, 51 S.Ct. 587, 75 L.Ed. 1324 (1931); Federal Trade Commission v. Gratz, 253 U.S. 421, 427, 40 S.Ct. 572, 64 L.Ed. 993 (1920). *See* Comment, 113 U.Pa.L.Rev. 303, 304–305 (1964); R. Burris and H. Teter, Anti-Trust: Rulemaking v. Adjudication in the FTC, 54 Georgetown L.J. 1106 (1965); Weston, Deceptive Advertising and the Federal Trade Commission: Decline of Caveat Emptor, 24 Fed.Bar J. 548 (1964). *But see,* Wegman, Cigarette and Health: A Legal Analysis, 51 Cornell L.Q. 678, 741 (1966); Elman, Rulemaking Procedures in the FTC's Enforcement of the Merger Law, 78 Harv.L.Rev. 385 (1964).

36. Iselin v. United States, 270 U.S. 245, 251, 46 S.Ct. 248, 70 L.Ed. 566 (1926).